**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

CAREFIRST, INC., *et al.*                      :
                                               :
                                               :
        v.                                     :
                                               :
                                               :
THE HON. STEPHEN C. TAYLOR, IN                 :        Civil No. CCB-16-2656
HIS OFFICIAL CAPACITY AS THE                   :
COMMISSIONER, DISTRICT OF                      :
COLUMBIA DEPARTMENT OF                         :
INSURANCE, SECURITIES AND                      :
BANKING, *et al.*                              :

**<u>MEMORANDUM</u>**

Plaintiffs CareFirst, Inc. ("CareFirst"), CareFirst of Maryland, Inc. ("CareFirst

Maryland"), and Group Hospitalization and Medical Services, Inc. ("GHMSI") (collectively,

"plaintiffs") have brought an action for declaratory and injunctive relief, claiming that certain

administrative orders issued by Stephen C. Taylor, Commissioner of the District of Columbia

Department of Insurance, Securities and Banking ("Commissioner Taylor" or "Commissioner"),

violate and are preempted by federal law.  They are suing Commissioner Taylor in his official

capacity.  Plaintiffs also have named as defendants the Insurance Commissioner of the Maryland

Insurance Administration, Alfred W. Redmer, Jr. ("Maryland Commissioner"), in his official

capacity, and the Chair of the Virginia State Corporation Commission, James C. Dimitri

("Virginia Chair"), in his official capacity.  Now pending are the Commissioner's motion to

transfer venue (ECF No. 20), the Commissioner's motion to substitute party (ECF No. 19), the

Commissioner's motion to dismiss Count I of the complaint (ECF No. 37),[1] and the plaintiffs'

---

[1] The Commissioner has moved to dismiss Counts I-IV of the complaint, but the court limited plaintiffs' response to
Count I only.  (*See* Order of Oct. 4, 2016, ECF No. 44.)  In Counts II and III, plaintiffs allege the violation of the

motion for summary judgment as to Count I of the complaint (ECF No. 2).  The motions have

been fully briefed, and the court heard oral argument on November 10, 2016.  (Mot. Hearing,

ECF No. 50.)  For the reasons discussed below, all four motions will be denied.

## BACKGROUND

GHMSI is a congressionally chartered corporation that operates as a non-profit health

services plan in Maryland, Northern Virginia, and the District of Columbia.[2]  (Mot. Summary

Judgment, Burrell Aff. ¶ 5, ECF No. 2-2; *see* Mot. Summary Judgment, Gunderson Aff. ¶ 4, Ex.

A, ECF No. 2-4.)  It is domiciled in the District of Columbia.  (Mot. Summary Judgment, Burrell

Aff. ¶ 10, ECF No. 2-2.)  GHMSI holds a certificate of authority to operate in Maryland, where

more than 42% of its members and subscribers reside.  (*Id.* ¶ 7-8.)

Congress chartered GHMSI in 1939.  Pub. L. 76-395, 53 Stat. 1412, 1412 (1939).  The

charter provided that "[t]he corporation is . . . authorized and empowered to take over, carry out,

and assume all contracts, obligations, assets, and liabilities of a corporation . . . organized and

now doing business in the District of Columbia under the name of Group Hospitalization, Inc."

Pub. L. 76-395 § 9, 53 Stat. 1414.  In 1993, Congress amended the charter to provide that "the

District of Columbia shall be the legal domicile of the corporation" and that "[t]he corporation

shall be licensed and regulated by the District of Columbia in accordance with the laws and

regulations of the District of Columbia."  Pub. L. 103-127 § 138, 107 Stat. 1336, 1349 (1993).

In 1997, Congress again amended the charter, authorizing GHMSI to have a non-profit corporate

---

Fifth Amendment Due Process Clause, the Full Faith and Credit Clause, and the Interstate Commerce Clause of the U.S. Constitution.  (Compl., ECF No. 1, ¶ 60-69.)  Count IV concerns declaratory judgment in the nature of interpleader.  (*Id.* ¶ 70-73.)  Plaintiffs' rights to respond to the motion to dismiss as it relates to Counts II-IV have been reserved.  (Order of Oct. 4, 2016, ECF No. 44.)

[2] CareFirst is a domestic non-profit health services plan and the sole member of GHMSI.  (Mot. Summary Judgment, Burrell Aff. ¶ 6, ECF No. 2-2.)  CareFirst Maryland is an affiliate of CareFirst.  (*Id.* ¶ 4.)

member.  Pub. L. 105-149, 111 Stat. 2684 (1997).

In order to fulfill its obligations to policyholders, subscribers, and members, GHMSI maintains an accumulated surplus.  (Mot. Summary Judgment, Burrell Aff. ¶ 12-14, ECF No. 2-2.)  In 2009, the Medical Insurance Empowerment Amendment Act of 2008 ("MIEAA") went into effect.  D.C. Code §§ 31-3501 *et seq.*  The MIEAA provides that, no less frequently than every three years, the Commissioner shall "review the portion of the surplus of [GHMSI] that is attributable to the District and may issue a determination as to whether the surplus is excessive." § 31-3506(e).  If the Commissioner determines that the surplus is excessive, "the Commissioner shall order [GHMSI] to submit a plan for dedication of the excess to community health reinvestment in a fair and equitable manner."  § 31-3506(g)(1).  After the District of Columbia enacted the MIEAA, Maryland and Virginia passed laws that authorized the Maryland Commissioner and Virginia Chair to take certain actions, including imposing a prohibition on the health service plan's distribution or reduction of its surplus for the benefit of residents in another state.  *See* Md. Code, Ins. Art. § 14-124; Va. Code § 38.2-4229.2.  In 2012, the Maryland Commissioner reviewed GHMSI's 2011 surplus and entered a Consent Order concluding that the surplus was "adequate and . . . neither excessive nor unreasonably large."  (Mot. Summary Judgment, Gunderson Aff. ¶ 4, Ex. E, ECF No. 2-8.)

In December 2014, the Commissioner's predecessor issued an order concluding that GHMSI's surplus was excessive and that 21% of the calculated excess (approximately $56 million) was attributable to the District of Columbia.  (*Id.*, Ex. B at 56, 64-65, ECF No. 2-5.)  In February 2015, the Maryland Commissioner entered an order providing that "GHMSI is prohibited from reducing or distributing its surplus as a result of the [Department of Insurance,

Securities and Banking ("DISB")] order and is prohibited from submitting a plan to the D.C.

Commissioner for dedication of its excess of 2011 surplus attributable to D.C. until submitted,

reviewed and approved by the [Maryland Insurance Administration]." (*Id.*, Ex. F at 3, ECF No.

2-9.)  The Virginia Chair issued an order providing:

> Virginia law prohibits GHMSI from distributing or reducing its surplus (as ordered by
> DISB) "except with the approval of the [Virginia State Corporation] Commission after
> the examination required by this section."  In this regard and at this moment, GHMSI has
> not sought—and the Commission has not provided—such approval.  Accordingly,
> GHMSI should not act to distribute or reduce its surplus unless approved as provided
> under Virginia law.

(*Id.*, Ex. I at 3-4, ECF No. 2-12.)   GHMSI submitted a plan in response to the order of the

Commissioner's predecessor in March 2015.  (*Id.*, Ex. J, ECF No. 2-13.)  The plan asserted, in

part, that GHMSI "remains under directly conflicting orders from Maryland and the District [of

Columbia]" and urged that "the three jurisdictions . . . consult, cooperate and coordinate on the

matter of the Company's surplus in a consistent way."  (*Id.* at 7.)

> In December 2015, Congress amended GHMSI's charter as follows:

> SEC. 747.  (a)  The Act entitled "An Act providing for the incorporation of certain
> persons as Group Hospitalization and Medical Services, Inc.", approved August 11, 1939
> (53 Stat. 1412) is amended . . . by inserting after section 10 the following:

> "SEC. 11.  The surplus of the corporation is for the benefit and protection of all its
> certificate holders and shall be available for the satisfaction of all obligations of the
> corporation regardless of the jurisdiction in which such surplus originated or such
> obligations arise.  The corporation shall not divide, attribute, distribute, or reduce its
> surplus pursuant to any statute, regulation, or order of any jurisdiction without the
> express agreement of the District of Columbia, Maryland, and Virginia—(1) that the
> entire surplus of the corporation is excessive; and (2) to any plan for reduction or
> distribution of surplus."

> (b) The amendments made by subsection (a) shall apply with respect to the surplus of the
> Group Hospitalization and Medical Services, Inc. for any year after 2011.

4

Pub. L. 114-113 § 747, 129 Stat. 2242, 2486 (2015).

In June 2016, Commissioner Taylor issued a decision and order rejecting GHMSI's plan and reaffirming the planned dedication of surplus. (Mot. Summary Judgment, Gunderson Aff. ¶ 4, Ex. C at 18-20, ECF No. 2-6.) The decision established a procedure for public comment. (*Id.*, Ex. C at 19-20, ECF No. 2-6.) In July 2016, the Maryland Commissioner submitted a statement noting that "the proposed distribution . . . will cause a direct conflict with the [Maryland] Consent Order" and that, "to date, no coordination has taken place between the District and the other jurisdictions." (*Id.*, Ex. K at 3, ECF No. 2-14.) Plaintiffs filed suit in this court on July 22, 2016. (*See* Compl., ECF No. 1.)

The Commissioner issued his final order regarding GHMSI's proposed distribution on August 30, 2016. (Opp. to Mot. Summary Judgment, Ex. A, ECF No. 47-2.) On September 22, 2016, GHMSI filed a petition for reconsideration and motion to stay further proceedings in the administrative action. (*Id.*, Ex. D., ECF No. 47-5.) Separately, both GHMSI and the D.C. Appleseed Center for Law and Justice, Inc. filed petitions for review with the District of Columbia Court of Appeals, naming DISB (but not its Maryland or Virginia counterpart) as defendant. (*Id.*, Exs. C and E, ECF Nos. 47-4 and 47-6.) On December 8, 2016, the Commissioner issued a stay of "GHMSI's obligation to pay rebates to Eligible Subscribers" until February 27, 2017. (Ex. to Letter of Dec. 8, 2016, ECF No. 51-1.)

## ANALYSIS

I. <u>Venue</u>

As an initial matter, the Commissioner requests that the court transfer this case to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1406 or, in the

alternative, 28 U.S.C. § 1404.  He contends that venue is improper here, requiring transfer under § 1406(a), because "no substantial part of the events or omissions giving rise to plaintiffs' claims occurred in the District of Maryland," (Mot. Transfer Venue, ECF No. 20, at 1), and no substantial part of the property that is the subject of the action is situated in Maryland, (Reply Mot. Transfer Venue, ECF No. 27, at 4).  *See* 28 U.S.C. § 1391(b)(2).  Alternatively, if venue is proper in this district, the Commissioner requests that the court exercise its discretion to transfer the case pursuant to § 1404, arguing that the District of Columbia is a more convenient venue for the parties and witnesses and that transfer is in the interest of justice.  For the reasons discussed below, venue is proper in this district, and the motion to transfer venue will be denied.

    A.  <u>Improper Venue Under § 1406</u>

    Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  Plaintiffs' stated basis for venue is 28 U.S.C. § 1391(b)(2), which provides that a civil case may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." (Compl., ECF No. 1, ¶ 17 (citing 28 U.S.C. § 1391); Opp. to Mot. Transfer Venue, ECF No. 26, at 2 (citing 28 U.S.C. § 1391(b)(2)).)  Plaintiffs' primary argument is that a substantial part of the events and omissions giving rise to the claim occurred in Maryland.  Plaintiffs also rely on the second clause of § 1391(b)(2), arguing that GHMSI's surplus constitutes "property that is the subject of the action" and that a substantial part "is situated" in Maryland.  (Opp. to Mot. Transfer Venue, ECF No. 26, at 14.)

6

When a defendant challenges venue under § 1391 and the court does not hold an evidentiary hearing, the plaintiff need only make a prima facie showing that venue is proper. *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004).   Because "it is possible for venue to be proper in more than one judicial district," the question is not whether a given district is the best venue, but whether the events or omissions that occurred there are "sufficiently substantial."  *See id.*   The Fourth Circuit has instructed courts to look to "the entire sequence of events underlying the claim," rather than just those that are "in dispute" or that "directly led to the filing of the action." *Id.*

Looking to the entire sequence of events underlying the claim, venue is proper in this district.  Plaintiffs' complaint identifies key events and omissions that occurred in the district of Maryland, among them the Maryland Commissioner's issuance of an order prohibiting GHMSI from reducing or distributing its surplus and the Maryland Commissioner's failure to consent to the proposed reduction and distribution.  (*See, e.g.*, Compl. ¶ 3, 6, 7, 12, 13, 17, 29, 35-38, 44, 46, 48, 50.)  These events and omissions form a substantial part of the basis for Count I.  (*See id.* ¶ 57 (alleging that the Commissioner's action is unlawful and violates the Supremacy Clause because "Maryland and Virginia have not agreed to the Commissioner's compelled reduction and distribution").)  Because venue is proper on the basis of substantial events or omissions, the court need not consider whether a "substantial part of property that is the subject of the action is situated" in this district.  *See* 28 U.S.C. § 1391(b)(2).

The Commissioner cites to pre-*Mitrano* case law for the proposition that "[e]vents that relate only tangentially to the claim cannot constitute a substantial part of the events or omissions giving rise to the claim."  (Mem. Mot. Transfer Venue, ECF No. 20-1, at 6 (quoting *MTGLQ*

*Inv'rs, L.P. v. Guire*, 286 F. Supp. 2d 561, 564 (D. Md. 2003)).)   He fails to acknowledge, however, that the *Mitrano* Court effectively narrowed the category of "tangential" events and omissions—and expanded the category of "substantial" ones—by clarifying that "a court should not focus only on those matters that . . . directly led to the filing of the action."  *See Mitrano*, 377 F.3d at 405.   In an effort to minimize the Maryland Commissioner's involvement, the Commissioner frames the controversy as a bilateral dispute between GHMSI and its regulator in the District of Columbia.  (*See* Mem. Mot. Transfer Venue, ECF No. 20-1, at 5-6.)   This argument is not persuasive, as GHMSI's amended charter clearly contemplates a role for all three jurisdictions.  *See* Pub. L. No. 114-113, 129 Stat. 2242, 2486 (2015).  The Commissioner further weakens his position by asserting contradictory arguments, at some points insisting that plaintiffs have not identified *any* event or omission that occurred in Maryland, and at others contending that the events or omissions they have identified are tangential in nature or indirectly related to the claim.  (*See, e.g.,* Mem. Mot. Transfer Venue, ECF No. 20-1, at 5 ("In this case, not a single 'event or omission' occurred in the District of Maryland."); *id.* at 6 ("plaintiffs . . . cannot point to an actual event, act, or omission that *occurred* in Maryland, because none has in fact taken place"); *id.* at 6 ("the only event referenced by plaintiffs that occurred in Maryland at all was the decision by the Maryland Insurance Administration to write to DISB regarding its regulatory actions").)   In any case, these descriptions do not accurately characterize the complaint.

Because plaintiffs have established a prima facie case that a substantial part of the events or omissions giving rise to the claim occurred in this district, *see* 28 U.S.C. § 1391(a)(2), the Commissioner's motion to transfer venue pursuant to § 1406 will be denied.

B.  Transfer Under § 1404

In the alternative, if venue is proper in this district, the Commissioner requests transfer to the U.S. District Court for the District of Columbia under 28 U.S.C. § 1404.  Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  "[T]he burden is on the moving party to show that transfer to another forum is proper."  *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002).

In deciding whether to transfer venue under § 1404(a), courts in this circuit consider the following factors: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice."  *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).  Unless the balance of factors "is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984) (quoting *Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1946)).  The decision whether to transfer venue under § 1404(a) is committed to the discretion of the district court.  *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984) (citing *Southern Ry. Co. v. Madden*, 235 F.2d 198, 201 (4th Cir. 1956), *cert. denied*, 352 U.S. 953 (1956)).

Regarding the first factor, courts have recognized that the plaintiff's chosen venue is "entitled to substantial weight."  *See Trustees*, 791 F.3d at 444.  The Commissioner argues that the court should afford "little to no weight" to plaintiffs' decision to sue in this district because "the plaintiff's forum is given little weight when none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in

controversy."  (Mem. Motion Transfer Venue, ECF No. 20-1, at 8.)  The cases upon which he relies, however—*Dicken v. United States*, 862 F. Supp. 91 (D. Md. 1994), and *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627 (E.D. Va. 2003)—are inapposite because venue in those cases arose under provisions that did not require the plaintiff to establish that "a substantial part of the events or omissions giving rise to the claim occurred" in the district.  In *Dicken*, the relevant provision was 28 U.S.C. § 1402(b), which states that "[a]ny civil action on a tort claim against the United States . . . may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred."  862 F. Supp. at 92.  The court concluded that venue was proper in the plaintiff's chosen district, the District of Maryland, based on the plaintiff's residency, but it granted transfer to the District of Kansas, where the accident occurred, as the more convenient forum under § 1404.  *Id.* at 92, 94-95.  Similarly, in *Koh v. Microtek*, venue arose under a provision stating that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  250 F. Supp. 2d at 630-31 (citing 28 U.S.C. § 1400(b) (2003)).  The court determined that the Kohs' chosen venue, the Eastern District of Virginia, was proper, but it granted transfer after analyzing the § 1404(a) factors, reasoning that "very little deference is due to the Kohs's choice of forum because . . . there is little, if any, connection between this district and the Kohs's claims."  *Id.* at 640.  In both *Dicken* and *Koh*, it was possible for venue to be proper despite a minimal connection between the district and matter in controversy.  That is not the case here, where venue arises under the "events or omissions" clause of § 1391(a)(2).  Under these circumstances, the plaintiffs' choice of venue is "entitled to substantial weight."  *See Trustees*, 791 F.3d at 444.

10

The factors of witness convenience and access, convenience of the parties, and the interest of justice also weigh against transfer in this case.  The Commissioner's arguments regarding witnesses and parties are similar to those rejected by this court in *Dow v. Jones*, 232 F. Supp. 2d 491, 498-500 (D. Md. 2002).  In that case, defendants argued that dismissal or a change of venue was appropriate because "defendants and their witnesses [were] located in the District of Columbia," because "many of the events that [were] the subject of th[e] litigation occurred in Washington, D.C.," and because "the District of Columbia ha[d] a greater connection to the . . . litigation."  *Id.* at 499.  The court determined that the defendants had not carried their burden because, in part, they "did not submit any affidavits from parties or witnesses stating that they would suffer hardship or inconvenience by having to travel from Washington, D.C. to Baltimore."  *Id.* at 499-500; *see id.* at 499 (citing *Helsel v. Tishman Realty & Constr. Co.*, 198 F. Supp. 2d 710, 712 (D. Md. 2002) ("Mere assertions of inconvenience or hardship are inadequate support for a motion to dismiss or transfer pursuant to 28 U.S.C. § 1404(a).")).  The Commissioner has not provided affidavits here.  In their absence, there is no basis for the court to conclude that travel between Washington and Baltimore would pose an undue hardship. Regarding the interest of justice, the Commissioner argues that the U.S. District Court for the District of Columbia "is more familiar with both District of Columbia law and the complex issues raised when Congress legislates for the District."  (Mem. Mot. Transfer Venue, ECF No. 20-1, at 10.)  He acknowledges, however, that this court is capable of applying the relevant law. (*Id.*)  At most, this factor is neutral for the Commissioner.

Because the Commissioner has not satisfied his burden to show that the balance of factors tips "strongly in [his] favor," *Collins*, 748 F.2d at 921, the motion to transfer venue pursuant to §

1404(a) will be denied.

II.    Motion to Substitute Party

The Commissioner has filed a motion to substitute the District of Columbia for himself as the proper defendant in this matter, contending that "Plaintiffs' suit against Commissioner Taylor in his official capacity is one that, legally, is against the District of Columbia as a whole." (Mem. Mot. Substitute, ECF No. 19-1, at 1 (citing *Jefferies v. District of Columbia*, 917 F. Supp. 2d 10, 29 (D.D.C. 2013)).)  He asserts that there is good cause for substitution because "clarity and simplicity favor substituting the District."  (Mem. Mot. Substitute, ECF No. 19-1, at 2.)  He also argues that DISB "is non [sic] *sui juris* and may not be a party to any civil action as a separate entity from the District of Columbia."  (*Id.*)

Plaintiffs vigorously oppose this motion, arguing that their choice of defendant should control.  They note that substitution could allow the Commissioner "to gain some advantage, or to procure some new defense," and they request that the court grant the motion to substitute only on the condition that the Commissioner and District of Columbia (1) waive any defenses the Commissioner would not have been entitled to assert and (2) commit to making the Commissioner available for discovery.  (Opp. to Mot. Substitute, ECF No. 22, at 6.)  In his reply, the Commissioner asserts that neither he nor the District "seek[s] to gain an advantage in the guise of substitution," but he refuses to provide the assurances that plaintiffs request.  (*See* Reply Mot. Substitute, ECF No. 25, at 1, 3-4.)

It clearly is proper to sue a government official in his official capacity, and it can be essential to the claim where, as here, plaintiffs assert that they are entitled to declaratory and injunctive relief under *Ex parte Young*.  The Commissioner cites to several cases, but they do not

support substitution on these facts.  In *Jefferies v. District of Columbia*, the court dismissed claims against a police chief in her official capacity because the plaintiffs also had named the District of Columbia as a defendant, rendering the claims against the official "redundant" and "inefficient."   917 F. Supp. 2d at 29.   The remaining cases involve distinguishable circumstances, such as the substitution of the District of Columbia for an agency that could not be sued in its own right.  (*See* Mem. Mot. Substitute, ECF No. 19-1, at 2 (citing *Blue v. District of Columbia*, 850 F. Supp. 2d 16, 23 (D.D.C. 2012); *Waker v. Brown*, 754 F. Supp. 2d 62, 65 (D.D.C. 2010); *Henneghan v. D.C. Pub. Schs.*, 597 F. Supp. 2d 34, 37 (D.D.C. 2009)).)  Here, the plaintiffs have sued the Commissioner in his official capacity, not DISB separately.  Notably, the Commissioner has not cited any cases in which substitution was granted where the plaintiffs were proceeding under *Ex parte Young*.

As the case law does not support substitution, and the Commissioner's only justifications are "clarity and simplicity," (Mem. Mot. Substitute, ECF No. 19-1, at 2), the court will deny the motion to substitute.

III.    Motion to Dismiss

Commissioner Taylor has moved to dismiss Count I of the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6).  First, the Commissioner argues that the court lacks federal question subject matter jurisdiction because GHMSI's charter is a local law of the District Columbia, rather than a federal law.  Second, he contends that the complaint fails to state a valid cause of action under the Supremacy Clause, the *Ex parte Young* doctrine, or 28 U.S.C. § 1983.  Alternatively, he requests that the court abstain from considering the case pending the determination of unsettled

questions of District of Columbia law by the District of Columbia Court of Appeals.   Because

none of these arguments has merit, the Commissioner's motion to dismiss will be denied.

A.   Legal Standard

A motion pursuant to Rule 12(b)(1) should be granted "only if the material jurisdictional

facts are not in dispute and the moving party is entitled to prevail as a matter of law."   *Evans v.*

*B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *see also United States ex rel. Vuyyuru v.*

*Jadhav*, 555 F.3d 337, 347–48 (4th Cir. 2009).   The plaintiff bears the burden of proving that

subject matter jurisdiction exists.   *Piney Run Preservation Ass'n v. Cnty. Comm'rs of Carroll*

*Cnty., Md.*, 523 F.3d 453, 459 (4th Cir. 2008).   Moreover, "[w]hen a defendant challenges

subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the

pleadings as mere evidence on the issue and may consider evidence outside the pleadings."   *Blitz*

*v. Napolitano*, 700 F.3d 733, 736 n.3 (4th Cir. 2012) (quoting *Velasco v. Gov't of Indonesia*, 370

F.3d 392, 398 (4th Cir. 2004)).

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled

allegations of the complaint as true," and "construe the facts and reasonable inferences derived

therefrom in the light most favorable to the plaintiff."   *Ibarra v. United States*, 120 F.3d 472, 474

(4th Cir. 1997).   "Even though the requirements for pleading a proper complaint are substantially

aimed at assuring that the defendant be given adequate notice of the nature of a claim being

made against him, they also provide criteria for defining issues for trial and for early disposition

of inappropriate complaints."   *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).   "The

mere recital of elements of a cause of action, supported only by conclusory statements, is not

sufficient to survive a motion made pursuant to Rule 12(b)(6)."   *Walters v. McMahen*, 684 F.3d

435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).   "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim.   However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted).   "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

   B. Does GHMSI's Charter Constitute Federal Law?

   Plaintiffs assert that the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which authorizes the federal district courts to exercise jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."   A case "arises under" federal law if "a well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983).   Congress has specified, however, that "laws applicable exclusively to the District of Columbia" do not constitute "laws of the United States" for purposes of § 1331 jurisdiction.   28 U.S.C. § 1366.

   The Commissioner contends that the court lacks federal question subject matter jurisdiction over plaintiffs' claims because GHMSI's congressionally enacted charter is a local law of the District of Columbia, not a law of the United States.   He acknowledges, however, that

"[t]he only court to consider this issue" has rejected his argument.  (Mem. Mot. Dismiss, ECF

No. 37-1, at 12.)  In *District of Columbia v. Group Hospitalization & Medical Services, Inc.*,

Judge Huvelle of the U.S. District Court for the District of Columbia concluded that the court

had federal question subject matter jurisdiction because "GHMSI's federal charter constitutes

federal law" and "must be construed and interpreted just like any other federal statute."  576 F.

Supp. 2d 51, 54-55 (D.D.C. 2008) (citing *Bd. of Dirs., Wash. City Orphan Asylum v. Bd. of Trs.,*

*Wash. City Orphan Asylum*, 798 A.2d 1068, 1080 (D.C. 2002)); *Supreme Lodge K. of P. v.*

*Mims*, 241 U.S. 574, 578 (1916)).  At least one other court has cited to Judge Huvelle's opinion

for this conclusion.  *See Washington Consulting Grp., Inc. v. Raytheon Tech. Servs. Co., LLC*,

760 F. Supp. 2d 94, 102 (D.D.C. 2011) (characterizing *Group Hospitalization & Medical*

*Services* as "finding federal question jurisdiction under *Grable* where state-law claim centered on

allegations that defendants had violated the Group Hospitalization and Medical Services'

corporate charter, a federal law").

Although *Group Hospitalization & Medical Services* is not binding on this court—and, as

the Commissioner notes, the decision includes little discussion or analysis of GHMSI's charter—

it constitutes persuasive authority that informs this court's independent analysis.  That analysis

begins with the definition of a District of Columbia "local law," which the D.C. Circuit has

explained as follows:

> When Congress acts as the local legislature for the District of Columbia and enacts
> legislation applicable *only* to the District of Columbia and tailored to meet specifically
> local needs, its enactments should—absent evidence of contrary congressional intent—be
> treated as local law, interacting with federal law as would the laws of the several states.

*District Props. Assocs. v. District of Columbia*, 743 F.2d 21, 27 (D.C. Cir. 1984) (emphasis

added); *see also Roth v. District of Columbia Courts*, 160 F. Supp. 2d 104, 108 (D.D.C. 2001)

(citing *District Properties Associates* for "[t]he standard for determining if a law is exclusively applicable to the District of Columbia").  In other words, an act of Congress is presumed to constitute federal law unless both of the following circumstances are present: first, Congress is "act[ing] as the local legislature for the District of Columbia," and, second, Congress is "enact[ing] legislation applicable only to the District of Columbia *and* tailored to meet specifically local needs."  *See District Properties Associates*, 743 F.2d at 27 (emphasis added). Even then, the enactment is not treated as local law if there is evidence of contrary congressional intent.  *Id.*

GHMSI's amended charter—which, by its plain terms, acknowledges a role for all three of GHMSI's regulators—does not satisfy this standard.  The Commissioner offers conclusory assertions that Congress was acting in its capacity as the District of Columbia's local legislature when it created and amended GHMSI's charter, but he does not point to legislative history or other evidence to support his claims.  (*See* Mem. Mot. Dismiss, ECF No. 37-1, at 11 ("Congress exercised its local legislative authority to create a District of Columbia corporation"); *id.* at 12 ("Here, Congress created GHMSI as a corporation domiciled in the District, and subsequently amended GHMSI's charter pursuant to Congress's ability to serve as local legislature."); *id.* ("GHMSI's charter is in fact a local law applicable only to the District, enacted by Congress pursuant to its ability to act as local legislator for the District."); *id.* at 13 ("Congress amended GHMSI's charter in a manner akin to a state legislature").)  More importantly, the Commissioner fails to explain how a law that includes Maryland and Virginia in decisions about GHMSI's surplus could be "applicable only to the District of Columbia" or "tailored to meet specifically local needs."  *See District Properties Associates*, 743 F.2d at 27.  Even if "the creation of

nonprofit corporations and the regulation of insurance companies are quintessentially local, rather than federal, actions," as the Commissioner asserts, (Mem. Mot. Dismiss, ECF No. 37-1, at 13), the fact that Congress is authorized to act as the District of Columbia's local legislature in a given area does not mean that it has exercised that authority in a particular instance.

As plaintiffs note, "[t]hat 'GHMSI's charter constitutes federal law' is, if anything, more obvious now than it was when the court decided *Group Hosp. and Med. Servs., Inc*" in 2008. (Opp. to Mot. Dismiss, ECF No. 45, at 2.)  After Judge Huvelle's decision, Congress amended the charter to add the "express agreement" provision and to state that GHMSI's surplus is "for the benefit and protection of all its certificate holders and shall be available for the satisfaction of all obligations of the corporation regardless of the jurisdiction in which such surplus originated or such obligations arise."  *See* Pub. L. 114-113 § 747, 129 Stat. 2242, 2486 (2015).  The Commissioner insists that this amendment does not change the local nature of the charter because it "is simply a regulatory change to GHMSI's ability, as a District corporation, to distribute or reduce its surplus."  (Mem. Mot. Dismiss, ECF No. 37-1, at 12-13.)  Even if he could prevail on this argument, however, the amended charter clearly is not "tailored to meet specifically local needs."  *See District Properties Associates*, 743 F.2d at 27.

For the reasons discussed above, GHMSI's charter is a law of the United States, not a District of Columbia local law.  The plaintiffs' right to relief "necessarily depends on resolution of a substantial question of federal law," and the court has federal question subject matter jurisdiction over plaintiffs' claims.  *See Franchise Tax Board*, 463 U.S. at 27-28.  The Commissioner's motion to dismiss due to lack of jurisdiction therefore will be denied.

C. <u>Does Count I State a Valid Cause of Action?</u>

Commissioner Taylor argues that, even if this Court has federal question jurisdiction, Count I fails because plaintiffs do not state a valid cause of action under the Supremacy Clause, *Ex parte Young*, or § 1983.  Plaintiffs respond that the complaint purports to state a "direct cause of action for violation of a federal statute, GHMSI's federal charter," rather than "'an independent cause of action' under the Supremacy Clause," and that they may proceed under either *Ex parte Young* or § 1983.  (Opp. to Mot. Dismiss, ECF No. 45, at 12.)  For the reasons discussed below, plaintiffs may proceed under the *Ex parte Young* doctrine.  The court will not consider whether, as a matter of first impression, GHMSI's charter gives rise to a cause of action under § 1983.

Count I is captioned "Violation of Federal Law – Violation of GHMSI's Federal Charter; Violation of Supremacy Clause, U.S. Const., Art. VI, Clause 2."  (Compl., ECF No. 1, at 23.)  It states that "[t]he Commissioner's planned seizure of $56 million of surplus is unlawful as it violates GHMSI's federal charter which Congress adopted and has amended." (*Id.* ¶ 56.)  It also asserts that "[t]he Commissioner's action of seemingly giving precedence to District of Columbia law over federal law (GHMSI's charter) is unlawful and in direct violation of the Supremacy Clause," (*id.* ¶58), and that "GHMSI's federal charter creates rights, privileges, or immunities in GHMSI," (*id.* ¶ 59).  Because GHMSI's charter is a federal law, and Count I alleges its violation by a state official sued in his official capacity, plaintiffs properly have pled a violation of federal law that implicates the Supremacy Clause.

As the Commissioner points out, however, the Supremacy Clause "is not the 'source of any federal rights,' . . . and certainly does not create a cause of action."  (Mem. Mot. Dismiss, ECF No. 37-1, at 15 (quoting *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378, 1383

(2015)).)  Plaintiffs' case therefore depends on whether they are entitled to seek relief for a violation of GHMSI's charter under either of their two asserted causes of action: the *Ex parte Young* doctrine and § 1983.  Plaintiffs argue that they may proceed under *Ex parte Young* because they seek to enjoin the enforcement of an administrative order that violates federal statutory law.  Alternatively, they contend, § 1983 provides a cause of action because GHMSI's charter "creates 'rights, privileges, or immunities' <u>in the particular plaintiff</u>."  (Opp. to Mot. Dismiss, ECF No. 45, at 14 n.5 (quoting *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 108 n.4 (1989) (emphasis added)).)

Under the longstanding doctrine of *Ex parte Young*, federal courts may enjoin state officers sued in their official capacity from continuing violations of federal law.  209 U.S. 123 (1908); *see also Armstrong*, 135 S. Ct. at 1384.  In general, official-capacity lawsuits constitute actions against the state and are barred by principles of sovereign immunity, but *Ex parte Young* carves out an exception in order to safeguard the supremacy of federal law.  *See Green v. Mansour*, 474 U.S. 64, 68 (1985).

Plaintiffs claim that their lawsuit falls squarely under *Verizon Maryland Inc. v. Public Service Commission of Maryland*, 535 U.S. 635 (2002).  In that case, the Supreme Court considered whether Verizon Maryland Inc. ("Verizon") could proceed in an action requesting "that state officials be restrained from enforcing an order in contravention of controlling federal law."  *Id.* at 645.  Verizon had alleged that an order of the Maryland Public Service Commission ("PSC"), which required it to pay reciprocal compensation to competitors for certain network traffic, violated the Telecommunications Act of 1996.  *Id.* at 638-41.  The Supreme Court considered two issues: first, whether the courts had federal question subject matter jurisdiction

under § 1331, and, second, whether the doctrine of *Ex parte Young* permitted Verizon to proceed against the individual commissioners in their official capacities.  *Id.* at 648.  It answered yes to both.  *Id.*  Regarding *Ex parte Young*, the Court clarified that lower courts "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Id.* at 645 (internal quotation marks omitted).  The Court also noted that an analysis of the merits is not part of the "inquiry into whether suit lies under *Ex parte Young*."  *Id.* at 646.

On remand, the district court refused to dismiss Count I of Verizon's amended complaint for failure to state a claim upon which relief can be granted, and the PSC appealed.  *Verizon Md., Inc. v. Glob. NAPS, Inc.*, 377 F.3d 355, 368 (4th Cir. 2004).  The PSC argued that the court lacked federal question jurisdiction and that the plaintiffs had failed to state a claim because the statute did not provide a cause of action.  *Id.*  The Fourth Circuit rejected both arguments.  It noted that the latter was "not . . . a true failure to state a claim argument" and that "[t]he PSC is committing the common error of confusing the jurisdictional issue with the issue of whether a claim is stated."  *Id.*  The court explained:

> Count I states a claim upon which relief can be granted: it alleges that the PSC misinterpreted the federally mandated interconnection agreement, and Verizon seeks declaratory and injunctive relief to correct the alleged misinterpretation.  Because we have held in part II.A that there is federal question jurisdiction over this claim under § 1331, we need not inquire into whether § 252(e)(6) provides a cause of action.  When a case's resolution depends on resolution of a federal question sufficiently substantial to arise under federal law within the meaning of 28 U.S.C. § 1331, there is § 1331 jurisdiction even though the relevant statute does not explicitly or implicitly provide for a cause of action.  We therefore reject the PSC's argument that Count I's contract misinterpretation allegations do not state a claim.

*Id.* at 368-69 (internal citations and quotation marks omitted).

The same reasoning applies here.  Because the resolution of plaintiffs' case "depends on

21

the resolution of a federal question sufficiently substantial to arise under federal law within the meaning of 28 U.S.C. § 1331," it is not necessary to determine whether "[GHMSI's charter] . . . explicitly or implicitly provide[s] for a cause of action." *Id.* Rather, so long as the court has federal question subject matter jurisdiction, the complaint—which seeks declaratory and injunctive relief to correct a state official's alleged misinterpretation of federal law—states a claim upon which relief can be granted. *Id.*

The Commissioner disputes that *Verizon* controls, arguing that plaintiffs can proceed under *Ex parte Young* only if they establish a cause of action under the relevant statute (here, GHMSI's charter) or § 1983. He relies primarily on the Sixth Circuit's decision in *Michigan Corrections Organization v. Michigan Department of Corrections*, 774 F.3d 895 (6th Cir. 2014). In that case, the court held that plaintiffs—correctional officers who had sued the Michigan Department of Corrections and its director, in his official capacity, under the Fair Labor Standards Act ("FLSA")—could not proceed because they did not have a private right of action under either the FLSA, §1983, or *Ex parte Young*. *Id.* at 904. With respect to *Ex parte Young*, the court explained:

> [E]ven in a case involving relief sought under *Ex parte Young*, courts must determine whether Congress intended private parties to enforce the statute by private injunction or for that matter by a declaratory judgment. *Ex parte Young* by itself does not create such a cause of action. Put another way, *Ex parte Young* provides a path around sovereign immunity *if* the plaintiff already has a cause of action from somewhere else.

*Id.* at 905.

The Commissioner's reliance on *Michigan Corrections* is misplaced. It is important to note, first, that *Michigan Corrections* is not the law of this circuit. To the extent that the Fourth Circuit's application of the *Ex parte Young* doctrine differs from the Sixth Circuit's, the former

22

controls.   Even taking *Michigan Corrections* on its own terms, however, the Commissioner ignores a key point: the Sixth Circuit reached its conclusion by distinguishing, rather than applying, *Verizon*.  *See id.* at 904 (referring to *Verizon* as a "proper *Ex parte Young* action").  In *Michigan Corrections*, the plaintiffs sought declaratory relief against a state official for ongoing violation of the FLSA.  *Id.* at 902.  The plaintiffs in *Verizon*, by contrast, requested "that state officials be *restrained* from enforcing an order in contravention of controlling federal law." *Verizon*, 535 U.S. at 645 (emphasis added).  For the court in *Michigan Corrections*, this difference was dispositive: when "the State is not threatening to sue anyone," and "litigants wield *Ex parte Young* as a cause-of-action-creating *sword*," plaintiffs have a remedy only if the statute or § 1983 provides a cause of action.  *Michigan Corrections,* 774 F.3d at 906.  On the other hand, "[p]rivate parties who act in compliance with federal law may use *Ex parte Young* as a *shield* against the enforcement of contrary (and thus preempted) state laws."  *Id.*  The court explained that the cause of action in such cases is an equitable anti-suit injunction, which arises from the principle that defendants may raise in equity those defenses available at law.  *Id.*

Here, plaintiffs clearly assert a defensive action.  As in *Verizon*, they request that the Commissioner "be restrained from enforcing an order in contravention of controlling federal law."  *See Verizon*, 535 U.S. at 645.  Further, they allege that the Commissioner's order—which imposes an obligation upon GHMSI and, if violated, is enforceable by the Commissioner in court—is preempted by GHMSI's charter, a federal law.  Thus, *Michigan Corrections* does not support the Commissioner's argument that plaintiffs have failed to state a claim.

The Commissioner cites a Fourth Circuit case, *Constantine v. Rectors and Visitors of George Mason University*, 411 F.3d 474 (4th Cir. 2005), for the proposition that "courts have

recognized that an implied private right of action is a prerequisite to proceeding under *Ex parte Young*." (Opp. to Mot. Summary Judgment, ECF No. 47, at 17-18.) In reality, that case stands for a far narrower principle. In *Constantine*, the plaintiff brought an *Ex parte Young* action seeking declaratory and injunctive relief under § 504 of the Rehabilitation Act, alleging that defendants violated that statute "by initially failing, and then later refusing, to make reasonable accommodations for her disability." *Id.* at 496. Citing to the landmark case of *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996), the court considered whether Congress intended to foreclose the availability of the doctrine by "creating specific remedies for violations by state actors" in the statute. *Constantine*, 411 F.3d at 497. In effect, the court in *Constantine* recognized that the *Ex parte Young* doctrine may be unavailable where there is evidence of congressional intent to displace it. *See id.* at 496-97. The Commissioner turns this principle on its head, suggesting that plaintiffs may proceed under *Ex parte Young* only where they can show that Congress created an implied private right of action.

The remaining cases cited by the Commissioner do not contribute much. In *Armstrong*, the Supreme Court held that plaintiffs could not proceed under *Ex parte Young* because the Medicaid Act implicitly precluded private enforcement. 135 S. Ct. at 1385. The Court's reasoning was specific to that statute, and it does not offer guidance here. The Commissioner also cites to the dissent in *Indiana Protection and Advocacy Services v. Indiana Family and Social Services Administration*, 603 F.3d 365, 392 (7th Cir. 2010) (Easterbrook, J., dissenting). In the majority opinion, however, the court held that plaintiffs could proceed in an action that "ask[ed] a federal court to order state officials to modify their conduct to comply with federal law." *Id.* at 374.

Here, as in *Verizon*, plaintiffs seek prospective declaratory and injunctive relief on the basis that a state administrative order violates federal law.  Their claim is a classic application of *Ex parte Young*.  The Commissioner's motion to dismiss for failure to state a claim will be denied.

D.  <u>Abstention</u>

Finally, the Commissioner contends that, "because this case involves federal constitutional claims premised on unsettled questions of District of Columbia law, this Court should abstain from deciding the case pending a determination of those issues by the District of Columbia Court of Appeals."  (Mot. Dismiss, ECF No. 37, at 1.)  He notes that "this case arises out of a long and contentious administrative process through which DISB determined both the amount of GHMSI's excess surplus attributable to the District and how GHMSI should dedicate that surplus to community reinvestment."  (Mem. Mot. Dismiss, ECF No. 37-1, at 22-23.) GHMSI's petition for review currently is pending before the District of Columbia Court of Appeals.

The Commissioner argues that this court should apply principles of *Pullman* abstention, a doctrine premised on the idea that, in certain cases, federal courts should "restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary."[3]  *Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 501 (1941).  To invoke *Pullman* abstention in this circuit, "at a minimum it must appear that there is (1) an unclear issue of state law presented for decision (2) the resolution of which may moot or present in a different posture the federal constitutional issue such that the state law issue

_____

[3] In his brief, the Commissioner also argued for abstention under *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817-20 (1976), but he abandoned that position at oral argument.  (*See* Mem. Mot. Dismiss, ECF No. 37-1, at 25; Mot. Hearing, ECF No. 50.)

is 'potentially dispositive'." *Educ. Servs., Inc. v. Md. State Bd. for Higher Educ.*, 710 F.2d 170, 175 (4th Cir. 1983).  For the reasons discussed above, however, there is no "unclear issue of state law" because GHMSI's charter is a law of the United States.

IV.   Motion for Summary Judgment

Plaintiffs have moved for summary judgment as to Count I, and the Commissioner has filed an opposition.  For the reasons discussed below, the motion will be denied.

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  Whether a fact is material depends upon the substantive law. *See id.* at 248.

Plaintiffs contend that the material facts are undisputed and that they are entitled to judgment as a matter of law.  In support of their motion, they rely on the arguments in their memorandum; the affidavit of Chet Burrell, President and Chief Executive Officer of CareFirst, CareFirst Maryland, and GHMSI; and the affidavit of Christopher Gunderson, counsel to plaintiffs, with attached exhibits.  (*See* ECF Nos. 2-1 to 2-14.)  They assert that "the material facts here are that the Commissioner plans to 'distribute [and] reduce' GHMSI's surplus and to do so 'without the express agreement of . . . Maryland, and Virginia,'" in violation of GHMSI's

26

charter.  (Mem. Mot. Summary Judgment, ECF No. 2-1, at 2.)  The Commissioner does not dispute these facts; rather, he argues that GHMSI's charter permits the proposed reduction and distribution.[4]

The question before the court is one of statutory construction.  "We begin, as always, with the text of the statute." *United States v. Serafini*, 826 F.3d 146, 149 (4th Cir. 2016) (quoting *Permanent Mission of India to the U.N. v. City of N.Y.*, 551 U.S. 193, 197 (2007)).  In general, the words of a statute should be given their ordinary meaning.  *Serafini*, 826 F.3d at 149 (citing *Perrin v. United States*, 444 U.S. 37, 42 (1979)).  "[W]e must first determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute . . . and our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *United States v. Bly*, 510 F.3d 453, 460 (4th Cir. 2007).  Where the statutory language is unambiguous, "the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Clark v. Absolute Collection Serv., Inc.*, 741 F.3d 487, 490 (4th Cir. 2014) (quoting *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004)).

GHMSI's amended charter reads, in relevant part:

[(a)] "SEC. 11.  The surplus of the corporation is for the benefit and protection of all its certificate holders and shall be available for the satisfaction of all obligations of the corporation regardless of the jurisdiction in which such surplus originated or such obligations arise.  The corporation shall not divide, attribute, distribute, or reduce its surplus pursuant to any statute, regulation, or order of any jurisdiction without the express agreement of the District of Columbia, Maryland, and Virginia—(1) that the entire surplus of the corporation is excessive; and (2) to any plan for reduction or

---

[4] The Commissioner also opposes plaintiffs' motion for summary judgment on grounds raised in his motion to dismiss, arguing that the court lacks federal question subject matter jurisdiction because GHMSI's charter is a local law of the District of Columbia, rather than a federal law; that plaintiffs fail to state a claim under which relief can be granted; and that the court should decline to exercise jurisdiction under the *Pullman* abstention doctrine.  These arguments fail for the reasons discussed above.

distribution of surplus."

(b) The amendments made by subsection (a) shall apply with respect to the surplus of the Group Hospitalization and Medical Services, Inc. for any year after 2011.

Pub. L. 114-113 § 747, 129 Stat. 2242, 2486 (2015).

The parties agree that subsection (a), which contains the "express agreement" requirement, circumscribes the Commissioner's actions with respect to GHMSI's surplus. They disagree as to the effect of subsection (b). Plaintiffs assert that, because surplus is "dynamic" and continually increases or decreases depending on a variety of factors, "any order by the Commissioner distributing GHMSI's surplus for community health reinvestment will necessarily affect surplus 'for any year after 2011,'" and therefore is subject to the "express agreement" provision. (Mem. Mot. Summary Judgment, ECF No. 2-1, at 16-17 (citing Burrell Aff. ¶ 16).) The Commissioner, on the other hand, insists that he may act without the agreement of Maryland and Virginia because he seeks to reduce the 2011 surplus only, and the "express agreement" requirement "does not attach until a jurisdiction seeks to order GHMSI to distribute a portion of its surplus attributable to a year *after* 2011." (Opp. to Mot. Summary Judgment, ECF No. 47, at 25.)

Under the plain language of the charter, the Commissioner has the better argument. Subsection (b) refers to "*the* surplus . . . *for* any year after 2011" (emphasis added).[5] The language of subsection (b) reflects two underlying assumptions: first, that Congress understood GHMSI's surplus to be calculable to a particular year, and second, that Congress intended to distinguish between years that were subject to the "express agreement" requirement and years that were not. If the concept of a 2011 surplus were "mythical," as plaintiffs contend, (Mem.

---

[5] The definition of "surplus" under the MIEAA is "the amount by which all admitted assets of the corporation exceed its liabilities, inclusive of the reserves required pursuant to § 31-3509." D.C. Code § 31-3501(11).

Mot. Summary Judgment, ECF No. 2-1, at 19), subsection (b) would be superfluous.  *See Espinal-Andrades v. Holder*, 777 F.3d 163, 168 (4th Cir. 2015) ("[W]e must try to give every word in the statute meaning to avoid rendering its terms superfluous.").

It is important to note that the question of how to properly calculate GHMSI's 2011 surplus is separate from the legal question of whether GHMSI's charter precludes the Commissioner's proposed reduction and distribution.  Indeed, plaintiffs' evidence establishes—and the Commissioner does not dispute—the dynamic nature of surplus and the difficulty it poses for accurate calculation.  (*See* Mot. Summary Judgment, Burrell Aff. ¶ 16-18, ECF No. 2-2.)  To the extent that plaintiffs challenge the result of the administrative proceedings, however, their claims are not presently before this court.

Ordinarily, the presence of unambiguous statutory language ends the inquiry.  Under rare circumstances, however, courts may go beyond the plain language of the statute.  Two exceptions are relevant here.  First, a court may look beyond the language if "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters."  *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989).  This exception is available only where the legislature clearly expressed the contrary intent.  *Russello v. United States*, 464 U.S. 16, 20 (1983).  Plaintiffs do not point to any such evidence.  (*See* Mem. Mot. Summary Judgment, ECF No. 2-1, at 18.)  Second, in "exceptional circumstances," courts may go beyond the unambiguous language of a statute if its application would lead to absurd results. Plaintiffs contend that the Commissioner's interpretation of GHMSI's charter would lead to absurd results by allowing him to order a reduction or distribution of GHMSI's surplus for any year before 2011.  In order for a court to depart from the established principles of statutory

construction, however, the absurdity "must be so gross as to shock the general moral or common sense," and "there must be something to make plain [Congress' intent] that the letter of the statute is not to prevail."  *Maryland State Dep't of Educ. v. U.S. Dep't of Veterans Affairs*, 98 F.3d 165, 169 (4th Cir. 1996) (quoting *Crooks v. Harrelson*, 282 U.S. 55, 59-60 (1930)).  That is not the case here.

Because the unambiguous language of GHMSI's charter does not entitle plaintiffs to judgment as a matter of law, the motion for summary judgment will be denied.

## CONCLUSION

For the reasons stated above, the motion to transfer venue, motion to substitute, motion to dismiss, and motion for summary judgment will be denied.  A separate order follows.


1/9/17                                                                    /S/
Date                                                    Catherine C. Blake
                                                        United States District Judge